COMMERCIAL CREDIT BUSINESS LOANS, INC., Plaintiff,

v.

NORTHBROOK LUMBER COMPANY, INC., et al., Defendants.

No. 82 C 942.

United States District Court, N. D. Illinois, E. D.

June 21, 1982.

Weissman & Pond, Philip L. Pomerance, Michael L. Weissman, Robert A. Pond, Chicago, Ill., for plaintiff.

Dominick Lentini, Norridge, Ill., Donald Ford, Ford & Grief, Wheaton, Ill., for defendants.

Allan E. Lapidus, John A. Relias, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for Northbrook Lumber Co., Inc. and Levin.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiff-creditor, Commercial Credit Business Loans, Inc. ("CCBL"), brought this action against defendant-debtor, Northbrook Lumber Co., Inc. ("Northbrook Lumber") and two additional defendants, Robert M. Levin and Phyllis Cretors d/b/a The Popcorn Factory, seeking, *inter alia,* collection of a debt owed by Northbrook Lumber to CCBL and a declaration that CCBL possesses a superior property interest to that of Levin and Cretors in certain furniture and office equipment once owned by Northbrook Lumber. In CCBL's pending motion, it has requested summary judgment against Levin and Cretors only.

### Factual Background

The following facts are not in dispute. On or about June 28, 1978, Northbrook Lumber and CCBL entered into an Accounts Receivable Contract and an Inventory Loan Agreement. Pursuant to those agreements, CCBL made certain loans to Northbrook Lumber and Northbrook Lumber gave CCBL security interests in, *inter alia,* Northbrook Lumber's accounts receivable and inventory. Those security interests were properly perfected by CCBL in a financing statement filed with the Illinois Secretary of State.

In September 1979, Northbrook Lumber filed for protection from its creditors under Chapter 11 of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 301 *et seq.,* and CCBL became a principal creditor of the bankrupt's estate. At all times relevant to this litigation, defendants Levin and Cretors were sublessees of a portion of Northbrook Lumber's premises for use in their business, The Popcorn Factory. Levin and Cretors were apparently not otherwise affiliated with Northbrook Lumber, and there is nothing in the record to indicate that Levin and Cretors were participants in the Chapter 11 proceedings.

On November 8, 1979, the bankruptcy court entered an order granting CCBL:

"[A] first and paramount lien (security interest) upon all of the following described property of the debtor-in-possession . . . (a) All . . . accounts receivable . . . (b) All . . . inventory and (c) all machinery and equipment then-owned or thereafter acquired and the proceeds thereof."

Contemporaneous with obtaining the above order, CCBL filed a new financing statement with the Secretary of State covering, *inter alia,* Northbrook Lumber's "accounts receivable, . . . inventory . . . [and] all machinery, equipment and goods of every kind, character and description, now owned or hereafter acquired." On December 17, 1981, the Chapter 11 proceedings were dismissed on Northbrook Lumber's motion.

The instant dispute between CCBL and Levin and Cretors arises out of a transaction which took place between Northbrook Lumber and the two individuals just prior to the dismissal of Northbrook Lumber's Chapter 11 proceeding. On or about December 5, 1981, Northbrook Lumber sold Levin and Cretors several items of office equipment and furniture for $4,075.00. The parties agree that that transaction was not in the ordinary course of Northbrook Lumber's business, and that it was completed without any notice to the bankruptcy court or to CCBL. According to the affidavit of one CCBL officer, CCBL was unaware that the above transaction took place until sometime after February 22, 1982, when CCBL began preparations to sell Northbrook Lumber's property in an attempt to satisfy Northbrook Lumber's indebtedness.

CCBL's motion for summary judgment is based upon its contention that it holds a perfected security interest or lien in the furniture and office equipment as a result of the bankruptcy court's order and the November 1979 financing statement, and that Levin and Cretors hold no interest at all in the property. CCBL contends that at the time that Northbrook Lumber purportedly sold the subject property to Levin and Cretors, Northbrook Lumber no longer possessed transferable title to the property. According to CCBL, once Northbrook Lumber filed its Chapter 11 petition, all of its property became the property of the bank-

rupt's estate, under the exclusive control of the bankruptcy court, and Northbrook Lumber was powerless to transfer any interest in that property.

In response, Levin and Cretors have argued that they were bona fide third-party purchasers of the property in dispute, and their ownership of the property is free and clear of any interest which CCBL believes it possesses. Specifically, Levin and Cretors argue that: (1) CCBL does not hold a security interest in the property because Northbrook Lumber never signed a security agreement as to its machinery and equipment and the bankruptcy court was powerless to create such an interest; (2) the bankruptcy court's lien covering "machinery and equipment" is unenforceable because it does not adequately describe the subject property; and (3) even if the bankruptcy court's lien were effective in describing the subject property, Levin and Cretors were bona fide purchasers without *actual* notice of the lien, and therefore took the property free of it. Alternatively, the defendants have argued that even if CCBL does have some type of interest in the subject property, CCBL must show that it has not already benefited from the proceeds of the purported sale by Northbrook Lumber ($4,075.00), before pursuing its claim to the property itself. That, according to the defendants, raises a factual issue warranting the denial of summary judgment.

*Discussion*

The two issues critical to a resolution of this controversy are: (1) whether the bankruptcy court conveyed a lien or security interest[1] in the subject property to CCBL and, if so, (2) whether Northbrook Lumber's purported sale of the property to Levin and Cretors was free and clear of that interest. Because the court finds that Northbrook Lumber did not possess transferable title to the property at the time of its "sale" to Levin and Cretors and that CCBL holds either a perfected security interest or lien in the property in dispute, the plaintiff's motion for summary judgment is granted.

The filing of a bankruptcy petition has the effect of divesting the debtor of "all legal or equitable interests" he possesses in property at the time of filing, 11 U.S.C. § 541(a)(1), and vests those interests in the bankrupt's estate. *See In re Ripp,* 242 F.2d 849, 852 (7th Cir. 1957). Among the rights and interests so relinquished by the debtor are his title to property, *see Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768, 774 (8th Cir. 1981), and the right to transfer his property "other than in the ordinary course of [the debtor's] business." *See* 11 U.S.C. § 363(b). Those who deal with the petitioner in bankruptcy are placed on notice of this loss in property rights by the filing of the bankruptcy petition. As one court noted:

"The filing of the petition was notice to the world, and all property of the bankrupt was thereafter to be considered in *custodia legis.* No right could then be acquired to it adverse to the trustee."

*Fitzgerald v. W.F. Sebel Co., Inc.,* 295 F.2d 654, 656 (10th Cir. 1961). *Accord, In re American Home Furniture Co.,* 265 F.Supp. 345 (E.D. Pa. 1967).

In the instant case, when Northbrook Lumber sought voluntary protection from its creditors by initiating Chapter 11 proceedings, it relinquished all title to its property for the duration of the Chapter 11 proceedings. As a result, on December 5, 1981, when Northbrook Lumber purported to "sell" Levin and Cretors certain of its property in a sale outside of the ordinary course of its business, it did not possess title to the property which it was selling. Title to that property was under the control of the bankruptcy trustee, and no interest adverse to the trustee's could have been acquired by Levin and Cretors by means of a separate transaction with the debtor. *See Fitzgerald, supra.* Levin and Cretors do not own the property in question.

Having found that Levin and Cretors did not acquire title to the subject

---

1. It is not necessary for the court to determine whether in fact the bankruptcy court was granting CCBL a lien or a security interest in the subject property, as the financing statement filed by CCBL and signed by Northbrook Lumber's president adequately served the notice function as to either interest in the property.

property as a result of their dealings with Northbrook Lumber, the court need deal only briefly with the issue of the strength of CCBL's interest in the property. Under the Bankruptcy Reform Act of 1978, the bankruptcy court is responsible for effecting an equitable distribution of the debtor's property in accordance with the priority rules that are set forth in the statute. *See, e.g.,* 11 U.S.C. § 726. Often that distribution is achieved by a division of the cash proceeds of a court-supervised bankruptcy sale, but there is no requirement that the court liquidate an estate in order to carry out its distribution function. In the case at bar, the bankruptcy court chose a lesser exercise of its authority than a judicial sale, and after a hearing entered a preliminary order granting CCBL a new security interest or lien in Northbrook Lumber's machinery and equipment. This court can find nothing improper in such an exercise of the bankruptcy court's authority.[2]

■ Levin and Cretors' principal substantive challenge to the bankruptcy court's order, if interpreted as conveying a security interest, is that the term "machinery and equipment" used in the order did not refer to or adequately describe the property in question. If the order is interpreted as a lien, they contend that the lien was ineffective to defeat their title to the property because they had no notice of its existence. Neither argument has merit. Addressing their first argument, the term "machinery and equipment" or simply "equipment" is a term of art used throughout the Uniform Commercial Code provisions concerning secured transactions, and is defined in Article 9 of the UCC as those goods which "are used or bought for use primarily in business ... or ... goods ... not included in the definitions of inventory, farm products or consumer goods." Since it is not seriously disputed that the property in question was used or bought for use primarily in North-

brook Lumber's business, and it has never been argued that the goods in question were Northbrook Lumber's inventory or farm goods or consumer goods, this court finds the bankruptcy court's use of that term sufficiently descriptive of the property in question to have placed Levin and Cretors on notice as to the existence of a security interest in the goods which they were purchasing.

■ As for the defendants' second argument, that a judicial lien may be defeated by anyone who acquires a property interest without *actual* notice of the lien, defendants have failed to furnish any support for that position. In this case, the defendants had ample constructive notice of CCBL's interest in the property in question. First, they would have received notice of CCBL's property interest if they had conducted a UCC search, as is customarily done prior to the purchase of equipment. In addition, the pendency of Northbrook Lumber's Chapter 11 proceedings placed Levin and Cretors on notice that the bankruptcy court, not Northbrook Lumber, was in control of the property in question. A review of the bankruptcy court's records would have clearly revealed the creation of the lien in question. This court believes that no further notice to Levin and Cretors would have been practicable or necessary for CCBL to protect its interest in the property in question. The court rejects the defendants' position that actual notice was required.

■ Defendants' final argument is that this case presents a disputed factual issue because CCBL may have already benefited from the $4,075.00 proceeds of the sale in dispute, and that an award of the property would represent a double recovery to CCBL. Although it is possible that CCBL has come into possession of a portion of the proceeds of the sale, that possibility remains conjectural at best. The defendants have neither shown nor indicated a manner in which they might be able to show that CCBL,

---

2. Although Levin and Cretors cite a few cases for the proposition that a security interest is not created in the absence of a consensual security agreement, they cite no authority to indicate that the bankruptcy court is unable to furnish the requisite consent in a Chapter 11 proceeding. Moreover, they have not disputed the authority of the bankruptcy court to create a lien in favor of one of the estate's creditors, as long as the lien comports with the priority rules set forth in the statute for the distribution of the estate.

rather than Northbrook Lumber or its president, has benefited from the sale in question. Moreover, the court does not believe that the possibility that such a benefit might be proven warrants a denial of summary judgment. As a matter of law, CCBL has established that it possesses a perfected security interest or lien interest in Northbrook Lumber's equipment, and that Levin and Cretors have no interest in that property. Any action by Levin and Cretors to recover the proceeds of Northbrook Lumber's alleged "sale" of that property to them is a separate matter for Levin and Cretors to pursue. For purposes of the pending motion, all that is relevant is that CCBL lent Northbrook certain sums of money, and that the loans were secured by a property interest in, *inter alia,* Northbrook Lumber's machinery and equipment. Inasmuch as it has never been alleged that the loans in question have been fully paid, an occurrence which would extinguish CCBL's property interest in the equipment, as a matter of law CCBL is entitled to its security.

*Conclusion*

For all of the reasons stated above, the plaintiff's motion for summary judgment against defendants Levin and Cretors is granted. The plaintiff is ordered to prepare a judgment order and present it in open court, upon notice to the defendants.